## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DWAYNE PARRIS,

      *Plaintiff,*

    v.

XAVIER BECERRA,

      *Defendant.*

Civil Action No. 1:20-cv-03363 (CJN)

## MEMORANDUM OPINION

Dwayne Parris is an African-American male who was employed by the Federal Drug Administration for approximately eight years.  In his two-count Amended Complaint, he alleges that his employer both discriminated against him and subjected him to a hostile work environment. The Defendant argues in the Motion to Dismiss that Parris fails adequately to plead either claim. Def. Mot., ECF No. 13.  For the reasons discussed below, the Court agrees as to Count I but not as to Count II, and Defendant's Motion is therefore granted in part and denied in part.

### I.     Background

For purposes of the pending Motion, the Court accepts the facts as alleged in the Amended Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Parris is an African-American male who was employed by the FDA as a Supervisor Management Analyst (GS-14) for approximately eight years.  Am. Compl. at 2–3, ECF No. 11. Parris asserts that his supervisors, two African-American women, Caldwell and McClendon, subjected him to disparate treatment and a hostile work environment on the basis of his race and sex. *Id.* at 3.

In particular, Parris alleges that Caldwell and McClendon repeatedly referred to him as an "angry black man" and other similar degrading racial stereotypes to other FDA employees, outside vendors, and others. *Id.* at 3.   And, in at least one instance, in a telephone call with Parris, McClendon called him an "angry black man" and explained that Caldwell agreed that he fit this racial stereotype. *Id.*

Parris also alleges a number of odd, demeaning, or embarrassing acts by McClendon and Caldwell that he attributes to race and sex animus.  At a staff meeting, for example, McClendon had an outburst in which she "abruptly announced that she 'wanted to address the elephant in the room,'" and then explained that she and Parris had applied for the same open position but that she had been selected—even though that had occurred a year earlier. *Id.* at 3–4.  Parris's supervisors also refused to publicly acknowledge or credit him for his work even though his co-workers, who were not African-American, did receive such public credit.  *Id.* at 4.  McClendon and Caldwell often instructed Parris not to speak during meetings. *Id.*  And they frequently and arbitrarily altered his instructions and duties without sufficient time for him to adjust, which he claims put him in a position to fail. *Id.* at 4–5.  As one example, McClendon and Caldwell demanded that Parris check and sort an order of over 2,000 shirts for delivery in one evening and denied his requests for additional staff to assist. *Id.*  Parris further alleges that his supervisors repeatedly reduced the time he had to complete tasks and denied his reasonable requests for additional time. *Id.*

Parris also alleges that McClendon and Caldwell "consistently and repeatedly denied [his] training, detail, and transfer requests" despite regularly granting such requests to his coworkers who were not black males. *Id.* at 4. Parris points to several training requests in 2017 and 2018 that, he asserts, were important for his career development and his being given better assignments. And, Parris alleges, McClendon and Caldwell required Parris to submit additional documentation

and justifications for additional training, even though they had not done so for Parris's co-workers who were not black males.  *Id.*

In June 2018, Caldwell "strongly recommended" that Parris explore taking a low-level position outside the federal government that offered him 35% less pay.  *Id.* at 5.  Shortly thereafter, Parris alleges, McClendon and Caldwell gave him an "unreasonable and unfair" mid-year performance evaluation in which they chastised him for over two and a half hours and demanded he account for leave requests and other events from two years prior.  *Id.*

Parris asserts that, as a result of McClendon's and Caldwell's conduct, he suffered harm to his career through their improper denial of his training, detail, and transfer requests, as well as through unreasonable and unfair performance reviews.  *Id.*  He was also asserts that he suffered from stress, depression, sadness, and a decreased desire to socialize or go to work.  *Id.*

In August 2018, Parris initiated the EEO complaint process and, in December 2018, he filed a formal complaint of discrimination with the Agency.  The Agency issued its final decision, apparently denying the claim, on August 21, 2020.  *Id.* at 2.  Parris filed this suit on November 19, 2020, Compl., ECF No. 1, and filed his Amended Complaint on June 21, 2021.  *Id.*  The Amended Complaint contains two claims:  Count I, which alleges race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, and and Count II, which alleges a hostile work environment in violation of Title VII of the Civil Rights Act of 1964.  *Id.* at 6–8.  The Secretary moves to dismiss both counts.  Def. Mot., ECF No. 13.

## II.     Legal Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief,

in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted). While extensive factual allegations are not necessary, a plaintiff must plead sufficient facts to "raise a right to relief above the speculative level." *Id.*

When ruling on a Rule 12(b)(6) motion, the Court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). The Court must construe the complaint liberally in the plaintiff's favor and grant the plaintiff the benefit of all reasonable inferences deriving from the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court must not accept a plaintiff's inferences that are "unsupported by the facts set out in the complaint." *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Recitals of "the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* at 663.

### III. Analysis

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Courts have elucidated this prohibition into different causes of action depending on the type of discrimination and harm. Parris asserts both a discriminatory treatment claim, which applies to tangible harms stemming from a discriminatory intent, as well as a hostile-work environment claim, which requires an objectively and subjectively hostile or abusive environment but does not necessarily require a specific job-related event.

4

a.       **Discriminatory Treatment Claim**

A Title VII claim for discriminatory treatment requires that a plaintiff ultimately show that the defendant had a discriminatory motive for taking a specific job-related action against the plaintiff. *U.S. v. Brennan,* 650 F.3d 65, 89–90 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). At this stage of the litigation, a plaintiff making such a claim must allege that he (1) suffered an adverse employment action (2) because of his race and/or sex. *See Hill v. Garland*, 2021 WL 965624, at *6 (D.D.C. Mar. 15, 2021) (citing *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008)).

The Secretary's primary argument with respect to Count I is that Parris has failed to plead that he suffered an "adverse employment action." As defined by the Court of Appeals, an "adverse employment action" is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant changes in benefits." *Broderick v. Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). "Purely subjective injuries, such as dissatisfaction with a reassignment or public humiliation or loss of reputation, are not adverse actions" for a discriminatory treatment claim. *Forkkio v. Powell*, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002) (internal citations omitted).[1] The Secretary argues that Parris's alleged harms are limited to subjective injuries, such as public humiliation, rather than adverse employment action, such as being denied a promotion or a significant reassignment.

---

[1] The Court of Appeals is currently reconsidering whether forced lateral transfers must have "objectively tangible harm" to constitute an adverse employment action. *Chambers v. D.C.*, No. 19-7098, 2021 WL 1784792, at *1 (D.C. Cir. May 5, 2021) (granting en banc review to reconsider *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)). Here, there is no allegation of a lateral transfer, but the relevant standard for what constitutes an adverse employment action may be in flux.

Parris responded to this argument in a largely conclusory fashion.  He argues that the Amended Complaint alleges the "denial of training opportunities among other thing[s] which constitute . . . grounds for his disparate treatment claim."  Pl. Opp. to Mot. at 11–12, ECF 15. Parris acknowledges that the Secretary contends that the mere denial of training opportunities— without an allegation of resulting material effect on pay, hours, responsibilities, or promotion opportunities—does not constitute an adverse employment action.  *Id.*  Parris's response is that he "alleges more than the denial of training"—he claims that he has alleged that the denials of training affected his ability to perform his current job duties and his work performance.  *Id.* at 12 (citing Am. Compl. ¶¶ 12, 14).  As Parris puts it, the denials of training "affected his ability to perform his job duties, to wit, training related to ongoing job performance and contradictory and overbearing instructions that impeded his work performance."  *Id*.  And, without citing the Amended Complaint, Parris argues that it "alleges that the denial of training was directly related to, and contemporaneous with his performance of specific job assignments—and therefore resulted in tangible, negative impact on his job responsibility."  *Id.* at 13.

The Court agrees with the Secretary.  Accepting the allegations in the Amended Complaint as true and accepting all reasonable inferences in his favor, Parris has not alleged an adverse employment action.  He does not assert he was fired, denied a promotion, given significantly different responsibilities, or that any act caused a significant change to his benefits.

The closest that Parris gets is the claim that his supervisors denied his requests for additional job training.  Such a denial could constitute an adverse employment action, but only if the denial "affected some material change in [the employee's] employment conditions, status or benefits." *Walker v. Mattis*, 319 F. Supp. 3d 267, 276 (D.D.C. 2018) (quoting *Lester v. Natsios*, 290 F. Supp. 2d 11, 29 (D.D.C. 2003)).  Put another way, the denial of a training opportunity must

6

result in an objectively tangible harm to suffice as an adverse employment action. *Edwards v. EPA*, 456 F. Supp. 2d 72, 86 (D.D.C. 2006) ("[T]o be adverse, the denial of a travel or training opportunity must have a discernible, as opposed to a speculative, effect on the terms, conditions, or privileges of one's employment.").

But Parris does not allege that any objective harm resulted from the denial of his requests for training. He does not allege that the denials prevented a promotion or pay raise, led to a reduction in pay, resulted in his termination, or otherwise caused the kind of harm that would itself be an adverse employment action. Rather, Parris argues simply that the training were "imperative" for his career development, but points to no actual detriment to his employment or career. Am. Compl. at 4.

To be sure, the Amended Complaint does allege that the denials of training opportunities "adversely impacted Plaintiff's ability to work in his current role and also his future employment opportunities." Am. Compl. at 3, *see id.* at 4. But these are conclusory and generic allegations, not allegations of tangible or objective harm. As to his "future employment opportunities," he does not claim, for example, that he was denied a job inside or outside the FDA, or that he was discouraged from applying because he knew he would be rejected because of his lack of training. And as to his ability to perform his job, while Parris does allege he was given unachievable tasks, he does not allege any "materially adverse consequences" or "objectively tangible harm" that occurred as a result. *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (quoting *Forkkio*, 306 F.3d at 1131). Parris may be able to allege such harm, but the Amended Complaint fails to do so.

### b.      Hostile Work Environment Claim

To survive a motion to dismiss, a Title VII hostile work environment claim must allege that the plaintiff "(1) . . . is a member of a protected class; (2) . . . was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment was severe to a degree which affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it." *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 189 (D.D.C. 2012).

The Secretary argues that Parris has failed to allege conduct that was sufficiently severe or pervasive.  For harassment to be sufficiently severe, "the workplace [must be] permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe and pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation marks and citations omitted).  "Severity and pervasiveness are determined by reference to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Baird v. Gotbaum*, 792 F.3d 166, 169 (D.C. Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)).

The Secretary contends that the Amended Complaint describes a typical workplace environment that sometimes can be demanding and in which some co-workers or supervisors may at times be inconsiderate or less than tactful.  *See Brooks v. Grundmann,* 748 F.3d 1273, 1277 (D.C. Cir. 2014) (plaintiff failed to establish a hostile work environment based on allegations showing that "her superiors and colleague may have been tactless and ill-mannered.").  The Secretary emphasizes that the relevant standard is "demanding" in order "to ensure that Title VII

does not become a general civility code" and "filter out complaints attacking the ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Parris responds by pointing to the portions of the Amended Complaint that allege that his supervisors "repeatedly" referred to him as an "angry black man" and other racial stereotypes, and they "consistently and repeatedly" denied Plaintiff's various requests for training, detail, and transfers despite non-black male co-workers having been granted such requests. Am. Compl. at 4. Parris also argues that McClendon "often" instructed him not to speak at meetings and refused to acknowledge or credit him for his work. *Id.* And, he alleges, his supervisors "frequently" altered their instructions to him without sufficient time for him to adjust. *Id.* Parris also alleges a number of episodes in 2018, including when he was called an "angry black man," received an unfair performance evaluation, and a particular instance in which his supervisors altered their instructions.

Again, the Court must construe all reasonable inferences from the allegations in Plaintiff's Amended Complaint in his favor. Parris has alleged, *inter alia*, repeated use of offensive racial stereotypes by his supervisors, repeated insults through being prohibited to talk at meetings, repeated differential treatment regarding work-related requests, and frequent changes to his assignments in a manner designed for him to fail. Based on these allegations, a jury could conclude that Parris was subjected to sufficiently severe and pervasive insult and ridicule such that the conditions of his employment were abusive.

The Secretary construes the complaint as referring to a handful of isolated incidents over a period of approximately eight years. *See* Def. Mot. at 14–15. Not so. While Parris worked for the Agency for approximately eight years, the Complaint involves facts primarily in 2017 and

2018. Am. Compl. at 3–5. And, as noted, Parris does not allege only isolated incidents, but frequent and repeated conduct. *Id.*

While it is true that the standard for ultimately proving a hostile work environment claim is "demanding," *see Faragher*, 524 U.S. at 788, at the motion to dismiss stage, inferences must be construed in favor of Parris. And although plaintiffs must typically provide evidence that goes beyond work-reassignments and boorish management styles, *see Román v. Castro*, 149 F. Supp. 3d 157, 171 (D.D.C. 2016); *Allen v. Napolitano*, 774 F. Supp. 2d 186, 205-06 (D.D.C. 2011) (holding "plaintiff's allegations are not sufficiently severe or pervasive" where plaintiff alleged, among other things, that she was excluded from meetings and not selected for a position, but did "not even allege that she was subject to a negative attitude or unkind words."); *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("[T]he removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management [cannot] be characterized as sufficiently intimidating or offensive in an ordinary workplace context."); *Na'im v. Rice*, 577 F. Supp. 2d 361, 377 (D.D.C. 2008) (finding that plaintiff's low performance ratings and non-selection for a position do not constitute a hostile work environment), or a single use of a racial slur, *see Tovihlon v. Allied Aviation, Inc.,* 323 F. Supp. 3d 6, 17–18 (D.D.C. 2018) (even if supervisor used racial slur on one occasion in reference to African-American employee, such incident, standing alone, was insufficient to establish prima facie case of hostile work environment), Parris has alleged his supervisors *repeatedly* used racial stereotypes and undertook frequent and various demeaning actions. At this stage of the litigation, that is enough. *See Wise v. Ferriero*, 842 F. Supp. 2d 120, 126–27 (D.D.C. 2012) (hostile work environment claim survived a motion to dismiss, "if not by much," based on allegations that a supervisor used a racial slur, as

well as "myriad incidents ranging from threats of discipline based on false accusations to being singled out and excluded from trainings and award ceremonies and denied promotions").

Parris must ultimately support his allegations by record evidence, and to survive summary judgment he will need to produce evidence that his supervisors, who are black women, were actually motivated by his race or sex. But the Court cannot now conclude that his hostile-work-environment claim should be dismissed.

### IV.     Conclusion

The Amended Complaint adequately alleges a hostile work environment claim, but it fails to state a claim for discriminatory treatment. An Order will be issued contemporaneously with this memorandum.


DATE:  February 2, 2022

CARL J. NICHOLS
United States District Judge